IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

SOTERO ORTIZ,                          :
                                       :
        Plaintiff                      :
                                       :
    v.                                 :    CIVIL NO. 4:CV-15-149
                                       :
CHARLES BUTTS,                         :    (Judge Brann)
ET AL.,                                :
                                       :
        Defendants                     :

## MEMORANDUM

March 2, 2016

## Background

This pro se civil rights action was filed by Sotero Ortiz, an inmate presently confined at the State Correctional Institution, Frackville, Pennsylvania (SCI-Frackville).  Named as Defendants are two officials at Plaintiff's prior place of confinement, the Mahanoy State Correctional Institution, Frackville, Pennsylvania (SCI-Mahanoy), Lieutenant Charles Butts and Correctional Officer Joseph Biscoe.

Plaintiff states that while held in the SCI-Mahanoy Restricted Housing Unit (RHU) on August 23, 2013 he was issued a misconduct by Correctional Officer Peters (a non-defendant) which charged him with assaulting fellow Inmate Boulware with feces in the shower and refusing orders from Peters to cease his

conduct.  See  Doc. 1, ¶ IV(3).  Ortiz was subsequently  found guilty of the charge and sentenced to a term of disciplinary confinement.

On September 13, 2013, Plaintiff admits that he showed 24 pain pills to Correctional Officer Mayernick (a non-defendant), told him that he was feeling suicidal and would take an overdose if he didn't receive medical attention.  See id. at (16).  As a result of those actions, Plaintiff was taken to the RHU triage room where he met with Defendant Biscoe, Doctor Boyce, and Nurse Kim.  It was determined that Ortiz should be placed on suicide watch and he was placed in a Psychiatric Observation Cell (POC).

After spending a weekend in the POC, Plaintiff was taken off suicide watch by Doctor Anher on September 16, 2013 and returned to the RHU.  However, upon his return Ortiz was immediately placed in an RHU "hard" cell without any type of due process by Defendant Butts and two other correctional officers.[1]  Id. at (20).  Plaintiff describes the hard cell as having a greater level of restraint and fewer privileges; and a double wicket which means that its occupants receive smaller meal trays; no desk or attached seat.  Moreover, the particular hard cell assigned to Plaintiff had a strong odor of feces and was filthy.

Plaintiff asserts that Butts denied his request to be immediately provided

---

[1]  Defendants describe this RHU cell as being a double wicket handicapped cell.  See  Doc. 22, p. 6.

with cleaning supplies and was told that he would have to wait until Saturday, the regular cell cleaning day.  The following day it is alleged that Defendant Biscoe also similarly denied a request by Ortiz for cleaning supplies.  On that same day, the Complaint contends that Biscoe and Butts separately told Plaintiff that his hard cell placement was a consequence of the August 23, 2013 and September 13, 2013 incidents.  See id. at (24-25).

Plaintiff next contends that after being in the hard cell for five days he began suffering intense pain in his back and left leg because the absence of a seat in the cell and discovered that former occupants of the cell had "jammed feces in the cracks of both windows of the inside of my cell door where the caulking would normally be."  Id. at (26).

The following day Plaintiff was provided with cleaning supplies, however, he admittedly made no effort to clean up the feces infected area "due to the obvious health and safety risk."  Id. at (27).  On September 23, 2013, Plaintiff states that he sent requests to both Defendants asking that his cell be power washed since regular cleaning supplies would be insufficient; he also advised them that the absence of a seat in his cell was causing his medical condition to worsen.  Oritz claims that while showering on September 25, 2013 he discovered three "forms of unidentified growth" on his abdomen which he attributes to the unsanitary condition of his cell.  Id. at (29).  The growths were diagnosed by the prison medical staff as being an

infection the following day and Ortiz was prescribed antibiotics.  Plaintiff was also treated for severe pain in his lower back and left leg.

 Ortiz was removed from the hard cell on September 30, 2013.  A few days later he was placed on lower tier,/bottom bunk status and was prescribed a cane.

The Complaint concludes that Defendants failed to protect Plaintiff's safety by improperly placing him in a hard cell for punitive reasons without providing any type of due process and ignored his requests to be provided a seat and cleaning of his hard cell.  As a result of their alleged indifference, Ortiz maintains that he developed a skin infection which required multiple treatments with antibiotics and that his pre-existing sciatica condition permanently worsened.  Plaintiff also contends that his hard cell placement constituted retaliation for seeking treatment for having suicidal thoughts by both Defendants.  See id. at (51).  As relief, Plaintiff seeks compensatory and punitive damages.

Presently pending is Defendants' motion to dismiss the Complaint for failure to state a claim.  See Doc. 18.  The opposed motion is ripe for consideration.

**Discussion**

Defendants seek dismissal of the Complaint on the grounds that a viable claim of unconstitutional conditions of confinement has not been alleged; the allegation of retaliation is insufficient; there is no basis for a procedural due process claim; and they are entitled to qualified immunity.  See  Doc. 22, p. 3.

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.  When ruling on a motion to dismiss under  Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).

A plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action.  Id. at 556.  A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  Id.  Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief.  See id. at 679.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Twombly</u>, 550 U.S. at 555.  The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." <u>Id</u>. at 562; <u>see also</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action).  Additionally, <u>pro se</u> pleadings are to be construed liberally, <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).

## Conditions of Confinement

Defendants initially point out that there are no assertions set forth in the Complaint that the conditions of Plaintiff's three day POC confinement were unconstitutional. <u>See</u>  Doc. 22, p. 6.  This Court agrees that there are no facts set forth in the Complaint that could support an Eighth Amendment claim with respect to Ortiz's short term POC detention.

With respect to Ortiz's fourteen day hard cell placement, the Defendants contend that the assertions that there was a strong odor of feces, that a former

occupant placed feces in the cracks of the cell window, and that there was no seat in the cell are insufficient to set forth a viable claim of unconstitutional conditions of confinement.

Prison officials must provide prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993).  It is well settled that prison conditions constitute cruel and unusual punishment if they result in serious deprivations of basic human needs.  See Tillman v. Lebanon County Correctional Facility, 221 F.3d 410 (3d Cir. 2000).

A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known objectively serious risk to a prisoner's health or safety.  See Farmer, 511 U.S. at 837; Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir.  2001).  This requirement means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.

The length of the inmate's exposure to the alleged unconstitutional conditions and the totality of the circumstances must be considered when making a determination as to cruel and inhumane treatment.  A prisoner must also establish a specific deprivation of a single, identifiable basic necessity.  Wilson v. Seiter, 501 U.S. 294, 304-05 (1991).  The inmate must also demonstrate that the prison official

responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." Id. at 298.

This is not a case where the Plaintiff is challenging a long term confinement or alleging that his cell was covered in feces.  Ortiz also acknowledges that he was given cleaning supplies as regularly scheduled after being the cell for five days but elected not to do any cleaning.  It is also noted that are no facts asserted establishing that the skin infection developed by Plaintiff resulted from the alleged condition of his cell.  Although Plaintiff contends that the cell did not have a seat, he does not claim that the cell did not have a bed or anywhere else for him to sit.

Given the relatively short period of time spent by Ortiz in the hard cell (approximately 14 days) and the purported inadequate  conditions of that confinement (odor of feces and lack of a chair) were not of such magnitude as to constitute the atypical and significant hardship contemplated under Hudson, Sandin, and Farmer.  The request for dismissal will be granted.

**Due Process**

Defendants next contend that the Complaint to the extent that it asserts that Plaintiff was placed in the POC and thereafter a hard cell without notice or a hearing fails to set forth a viable denial of due process claim.  See Doc. 22, p. 13.

The Fourteenth Amendment prohibits the states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV,

§ 1.  In order to determine whether a due process violation has occurred, an initial

determination must be made that a protected liberty interest exists and, if so, the

next step is to define what process is mandated to protect it.  See  Sandin v.

Conner, 515 U.S. 472, 484 (1995).  A protected liberty interest may be created by

either the Due Process Clause itself or by state law.  Id.  Due process requirements

apply only when the prison officials' actions impose "an atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life."  Id. at

484.  Conversely, there can be no due process violation where there is no protected

liberty interest.

The Supreme Court in Sandin stated that "[d]iscipline by prison officials in

response to a wide range of misconduct" is expected as part of an inmate's

sentence.  Sandin, 515 U.S. at 485.  The United States Court of Appeals for the

Third Circuit relying on the Sandin principles has found no merit in due process

claims presented  regarding short term institutional disciplinary custody placement.

See Torres v. Fauver, 292 F.3d 141, 150-51 (3d Cir. 2002)(placement in

segregation as a disciplinary sanction did not implicate a protected liberty interest);

Smith v. Mensinger, 293 F.3d 641, 645, 654 (3d Cir. 2002)(seven (7) months of

disciplinary confinement did not implicate liberty interest).

The Third Circuit in Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997),

addressed an action initiated by a Pennsylvania state inmate who had been held in

administrative custody for a prolonged period.  The Court applied <u>Sandin</u> and

concluded that placement without any type of due process hearing for a period of

fifteen (15) months was not an atypical and significant hardship.  Furthermore, the

inmate's "commitment to and confinement in administrative custody did not

deprive him of a liberty interest and that he was not entitled to procedural due

process protection."  <u>Id</u>. at 708.  It added that prolonged confinement in

administrative custody was not cruel and unusual punishment.  <u>Id</u>. at 709.  Finally,

an inmate placed in administrative custody pursuant to a legitimate penological

reason could "be required to remain there as long as that need continues."  <u>Id</u>.

Pursuant to the standards developed in <u>Sandin</u>, <u>Torres</u>, <u>Griffin</u>, and similar

subsequent decisions, this Court finds that the Complaint to the extent that it

alleges that Ortiz was subjected to an improper placements in both the POC (3

days) and a hard cell (14 days) for either disciplinary or administrative reasons are

meritless because the magnitude and relatively brief duration of those placements

in SCI-Mahanoy segregated housing units did not implicate a protected liberty

interest.

This determination is bolstered by Plaintiff's admission that he was placed in

the POC only after he made threats of suicide while showing a correctional officer

that he was in possession of a substantial amount of pills.  Clearly, such conduct by

Ortiz provided a legitimate basis for an immediate three day POC placement.

With respect to Plaintiff's transfer for approximately two weeks to a hard cell following his release from the POC, the inmate also acknowledges that Defendants informed him that this short term placement was warranted because of his recent behavioral issues, specifically his assault on another inmate and the aforementioned suicide threat, a decision which also is based upon legitimate penological reasons.  Moreover, it is noted that attached to the Complaint are copies of institutional reports showing that Ortiz receive regular periodic reviews medical care, and evaluations throughout his RHU confinement.

Since Ortiz has failed to sufficiently allege that he was subjected to an atypical and significant hardship while confined at SCI-Mahanoy as required under Sandin, the request for entry of dismissal with respect to the due process claims will be granted.

**Retaliation**

Defendants next contend that a viable claim of retaliation is not set forth in the Complaint.  They assert that since Plaintiff was placed in the POC and hard cell "due to his own misconduct" his retaliation claim must fail.  Doc. 22, p. 11.

To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a constitutionally protected activity.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, a prisoner must demonstrate that he "suffered some 'adverse

action' at the hands of prison officials." (Id.)(quoting <u>Allah v. Seiverling</u>, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." (Id.)(quoting <u>Suppon v. Dadonna</u>, 203 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." <u>Rauser</u>, 241 F.3d at 333-34(quoting <u>Mount Health Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 287 (1977)). The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.[2] <u>See</u> <u>Lape v. Pennsylvania</u>, 157 Fed. App'x. 491, 498 (3d Cir. 2005).

Once Plaintiff has made a <u>prima facie</u> case, the burden shifts to the Defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." <u>Carter v. McGrady</u>, 292 F.3d 152, 158 (3d. Cir. 2002)(internal quotation and citation omitted). When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison

---

[2]    Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation. <u>Krouse v. American Sterlizer Co.</u>, 126 F.3d 494, 503 (3d Cir. 1997).

security is concerned.  <u>Rauser</u>, 241 F.3d at 334.

This is not a case where a prisoner is alleging that the purported retaliatory action was taken in response to his initiation of grievances and/or civil suits or his engagement in any other type of constitutionally protected activity.  Rather, Plaintiff acknowledges that his placements were initiated after he made a suicide threat and had been found guilty of assaulting another prisoner.  As such,  this Court is not satisfied that the <u>Rauser</u> requirement that Plaintiff show that he was engaged in a constitutionally protected activity was arguably met.

The third <u>Rauser</u> prong requires a prisoner must prove that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him.   Despite a liberal review of the Complaint, it is apparent that Ortiz's alleged participation in  constitutionally protected conduct was not a substantial or motivating factor in the decision to segregate him.  On the contrary, the POC and hard cell placements would have been undertaken since Plaintiff acknowledges that his POC placement was ordered in response to his credible suicide threat and that his hard cell placement stemmed from both his suicide threat and recent purported assault on another prisoner.   Defendants' request for dismissal of the retaliation claims will be granted.

## **Qualified Immunity**

Defendants also argue that they are entitled to qualified immunity.  <u>See</u> Doc.

22, p. 15.  They argue that there have been no constitutional violations and even if there were constitutional violations in this case, "Plaintiff's rights were not clearly established given the facts of this case and the information in the Defendants' possession."  Id.

Qualified immunity is an affirmative defense which must be pleaded by the defendant official.  Verney v. Pennsylvania Turnpike Comm'n, 881 F. Supp. 145, 149 (M.D. Pa. 1995).  In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the Supreme Court held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Id. at 818; Sherwood v. Mulvihill, 113 F.3d 396, 398-99 (3d Cir. 1997); Showers v. Spangler, 957 F. Supp. 584, 589 (M.D. Pa. 1997).

It has also been held that "qualified immunity is coextensive for suits brought against state officials under 42 U.S.C. § 1983 (1982), and for suits brought directly under the Constitution against federal officials."  People of Three Mile Island v. Nuclear Regulatory Commissioners, 747 F.2d 139, 144 n.9 (3d Cir. 1984) (citing Butz v. Economou, 438 U.S. 478, 504 (1978)).

The Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), established a two part test for analyzing qualified immunity claims.  See also Curley v. Klem, 298 F.3d 271 (3d Cir. 2002); Bennett v. Murphy, 274 F.3d 133 (3d Cir. 2002).  The

initial inquiry in a qualified immunity examination is whether "the facts taken in the light most favorable to the plaintiff show a constitutional violation." <u>Bennett</u>, 274 F.3d at 136.  The second prong requires a determination as to whether the constitutional right at issue was clearly established.  If so, then a court must inquire as to "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Saucier</u>, 533 U.S. at 201.  A determination that the conduct violated a clearly established constitutional right precludes the granting of qualified immunity.

This Court has determined that Plaintiff has not set forth a viable claim that his constitutional rights were violated.  Assuming arguendo that a constitutional violation did occur with respect to the challenged actions taken by the Defendants, it is apparent that it would not have been clear to a reasonable person that their conduct was unlawful.

Accordingly, the moving Defendants would be entitled to qualified immunity.  An appropriate Order will enter.

BY THE COURT:

  s/ Matthew W. Brann_____
Matthew W. Brann
United States District Judge